# 22-0901

# United States Court of Appeals
*for the*
## Second Circuit

---

IN RE: AMR CORPORATION,

*Debtor*

CAROLYN FJORD, KATHERINE R. ARCELL, KEITH DEAN BRADT, JUDY BRAY, JOSE M. BRITO, JAN MARIE BROWN, ROBERT D. CONWAY, JUDY CRANDALL, ROSEMARY D'AUGUSTA, BRENDA K. DAVIS, PAMELA FAUST, DON FREELAND, DONALD V. FRY, GABRIEL GARAVANIAN, HARRY GARAVANIAN, YVONNE JOCELYN GARDNER, LEE M. GENTRY, VALARIE ANN JOLLY, GAIL S. KOSACH, MICHAEL C. MALANEY, LEN MARAZZO, LISA MCCARTHY, PATRICIA ANN MEEUWSEN, L. WEST OEHMIG, JR., CYNTHIA PROSTERMAN, DEBORAH M. PULFER, DANA L. ROBINSON, ROBERT A. ROSENTHAL, BILL RUBINSOHN, SONDRA K. RUSSELL, SYLVIA N. SPARKS, JUNE STANSBURY, CLYDE D. STENSRUD, WAYNE TALEFF, GARY TALEWSKY, ANNETTE M. TIPPETTS, DIANA LYNN ULTICAN, J. MICHAEL WALKER, PAMELA S. WARD, CHRISTINE O. WHALEN,

*Appellants,*

*(for continuation of caption, see inside cover)*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (NEW YORK CITY)

## REPLY BRIEF FOR APPELLANTS

| | |
|---|---|
| LAW OFFICE OF THERESA D. MOORE, PC | ALIOTO LAW FIRM |
| Theresa D. Moore, Esq. | Joseph M. Alioto Sr., Esq. |
| *Co-counsel for Appellants* | *Attorneys for Appellants* |
| One Sansome Street, 35th Floor | One Sansome Street, 35th Floor |
| San Francisco, California 94104 | San Francisco, California 94104 |
| (415) 613-1414 | (415) 434-8900 |

_____

– v. –

AMR CORPORATION,

*Debtor-Appellee,*

-and-

AMERICAN AIRLINES GROUP INC.,

*Appellee.*

_____

# Corporate Disclosure Statement (FRAP 26.1)

Pursuant to the disclosure requirements of Federal Rule of Appellate Procedure 26.1, Appellants Carolyn Fjord, Katherine R. Arcell, Keith Dean Bradt, Judy Bray, Jose M. Brito, Jan Marie Brown, Robert D. Conway, Judy Crandall, Rosemary D'Augusta, Brenda K. Davis, Pamela Faust, Don Freeland, Donald V. Fry, Gabriel Garavanian,; Harry Garavanian, Yvonne Jocelyn Gardner, Lee M. Gentry, Valarie Ann Jolly, Gail S. Kosach, Michael C. Malaney, Len Marazzo, Lisa McCarthy, Patricia Ann Meeuwsen, L. West Oehmig, Jr., Cynthia Prosterman, Deborah M. Pulfer, Dana L. Robinson, Robert A. Rosenthal, Bill Rubinsohn, Sondra K. Russell, Sylvia N. Sparks, June Stansbury, Clyde D. Stensrud, Wayne Taleff, Gary Talewsky, Annette M. Tippetts, Diana Lynn Ultican, J. Michael Walker, Pamela S. Ward, and Christine O. Whalen are individuals and as such have no parent corporation and there is no publicly held corporation that owns 10% or more of their stock.

# Table of Contents

**Corporate Disclosure Statement (FRAP 26.1)** ............................................................... i

**Table of Authorities** ........................................................................................................ iii

**Statement of Subject Matter and Appellate Jurisdiction** ........................................... 5

**Statement of the Issue** ..................................................................................................... 6

**Statutes and Rules** ............................................................................................................ 6

Statement of the Case ........................................................................................................... 7

Introduction ............................................................................................................................ 7

Argument ............................................................................................................................... 10

Conclusion ............................................................................................................................. 15

**Certificate of Compliance with Fed. R. App. 32(a)(7)** ............................................ 17

**Certificate of Service** ....................................................................................................... 18

# Table of Authorities

**Cases**

*Ball Memorial Hospital, Inc. v. Mutual Hospital Ins., Inc.*, 784 F.2d 1325, 1336-37 (7th Cir. 1986) .................................................................................................................. 12

*Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959) .......................................................... 14

*Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) ................................................... 8, 9, 12

*Brown v. Penn. State Empls. Credit Union*, 851 F.2d 81, 84 (3d Cir. 1988) ........................... 6

*Flood v. Kuhn*, 407 U.S. 258 (1972) ........................................................................................ 10

*Hospital Corp. of Am. v. FTC*, 807 F.2d 1381, 1385 (7th Cir. 1986) (Posner, J.) .............. 11

*In re AMR Corp.*, No. 1:21-cv-02163, Dkts. 34, 35 (S.D.N.Y. Mar. 25, 2022) ................ 7

*In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir. 1990) .............................................. 6

*United States v. Aluminum Co. of America*, 377 U.S. 271 (1964) ..................................... 9, 12

*United States v. Citizens & Southern Nat'l Bank*, 422 U.S. 86 (1975) ................................. 12

*United States v. Falstaff Brewing Corp.*, 410 U.S. 526 (1973) ................................................. 9

*United States v. General Dynamics Corp.*, 415 U.S. 486 (1974) ...................................... 11, 12

*United States v. Pabst Brewing Co.*, 384 U.S. 546 (1966) .................................................. 9, 12

*United States v. Philadelphia National Bank*, 374 U.S. 321 (1963) .................................. 9, 11

*United States v. Vons Grocery Co.*, 384 U.S. 270 (1966) .................................................. 9, 12

**Statutes**

15 U.S.C. § 15 ............................................................................................................................ 6

15 U.S.C. § 18 ............................................................................................................................ 6

15 U.S.C. § 26 .......................................................................................................... 5, 7

28 U.S.C. § 157(b)(1) ................................................................................................. 5

28 U.S.C. § 158 ........................................................................................................... 5

28 U.S.C. §1291 .......................................................................................................... 5

28 U.S.C. §1331 .......................................................................................................... 5

28 U.S.C. §1337 .......................................................................................................... 5

**Treatises**

*Antitrust Law – An Economic Perspective,* by Richard Posner, University of Chicago
   Press, 1976 ............................................................................................................. 12

## Statement of Subject Matter and Appellate Jurisdiction

The bankruptcy court had jurisdiction under 28 U.S.C. § 157(b)(1) because this is an adversary proceeding commenced in a Chapter 11 case. The bankruptcy court had federal question jurisdiction under Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26 and 28 U.S.C. §§ 1331 and 1337.

The complaint was filed in the Bankruptcy Court on August 6, 2013, prior to the time that the Bankruptcy Court allowed the merger. The bankruptcy court granted judgment to Defendants on February 22, 2021. Adv. Dkt. 294.[1] Plaintiffs filed a timely notice of appeal under Federal Rule of Bankruptcy Procedure 8002 on February 23, 2021. Adv. Dkt. 295. The U.S. District Court for the Southern District of New York, had jurisdiction under 28 U.S.C. § 158 because the Plaintiffs appealed a final judgment entered by a bankruptcy court.

The district court issued an order and judgment affirming the judgment of the bankruptcy court on March 25, 2022. SPA-34, 35. Plaintiffs filed a timely notice of appeal on April 20, 2022. A-36, 40. This court has appellate jurisdiction under 28 U.S.C. §§ 158 and 1291.

---

[1] "SPA" refers to the Special Appendix; "A" refers to the Appendix; "Dkt." refers to the district court docket; "Adv. Dkt." refers to the bankruptcy court adversary proceeding brought by Plaintiffs, Case No. 13-01392 (Bankr. S.D.N.Y.). "Ch. 11 Dkt." refers to the Chapter 11 proceeding brought by AMR, Case No. 11-15463 (Bankr. S.D.N.Y.).

# Statement of the Issue

**Issue**: The District Court, like the Bankruptcy Court, candidly and specifically refused to follow the binding and controlling decisions by the Supreme Court of the United States. Instead, the Bankruptcy Court opted to apply what the Court described as the "modern" approach to merger cases. The issue presented is whether the Bankruptcy Court and the United States District Court decisions should and must be reversed as a matter of law because of the failure to adhere to the decisions by the Supreme Court and the law and policy of *stare decisis*.

**Standard of Review**: "The court exercises the same review over the district court's decision that the district court may exercise [over the bankruptcy court's decision]." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir. 1990) (alterations in original) (quoting *Brown v. Penn. State Empls. Credit Union*, 851 F.2d 81, 84 (3d Cir. 1988)). "Accordingly, we review conclusions of law *de novo*, and findings of fact under a clearly erroneous standard." *Id.* at 988-89.

## Statutes and Rules

**Section 7 of the Clayton Act, 15 U.S.C. § 18**:
> No person engaged in commerce or in any activity affecting commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital … where in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or tend to create a monopoly.

**Section 4 of the Clayton, 15 U.S.C. § 15**
> . . . any person who shall be injured in his business or property by reason of anything forbidden in the antitrust

laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

### Statement of the Case

This is an appeal from an order and judgment by the Honorable Judge Katherine Polk Failla, U.S. District Court for the Southern District of New York, affirming a judgment of the U.S. Bankruptcy Court of the Southern District of New York denying Plaintiffs' request to unwind the merger and pursuant to Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26 (SPA-1; SPA-2) and, after the merger, to allow the plaintiffs to proceed to jury trial pursuant to Section 4 of the Clayton Antitrust Act. The decision is not reported. *See In re AMR Corp.*, No. 1:21-cv-02163, Dkts. 34, 35 (S.D.N.Y. Mar. 25, 2022).

### Introduction

The decisions by the Supreme Court of the United States in the late 1960's and early 1970's interpreting Section 7 of the Clayton Antitrust Act have never been overruled. The Congress of the United States has never changed those decisions. Consequently, those decisions by the Supreme Court (and the absence of any action whatsoever by the Congress of the United States) are binding on all lower Courts. Only the Supreme Court and the Congress can change them, and neither has done so.

After and even during WWII, the Congress of the United States in 1943 and culminating in 1950 adopted an amendment to the Anti-Merger Statute, Section 7 of the Clayton Act. The first decision interpreting that Act was the Supreme Court case in *Brown Shoe, Co. v. United States*, 370 U.S. 294 (1962). In that decision, the Supreme Court set out the fundamental policy of the United States regarding mergers, including the social and political as well as the economic policy of the Act. The United States opted for competition rather than combination as the fundamental rule of trade. The Supreme Court said:

> "A company's history of expansion through mergers presents a different economic picture than a history of expansion through unilateral growth. Internal expansion is more likely to be the result of increased demand for the companies' products and is more likely to provide increased investment in plants, more jobs and greater output. Conversely, expansion through merger is more likely to reduce available consumer choice while providing no increase in industry capacity, jobs, or output. It was for these reasons, among others, Congress expressed its disapproval of successive acquisitions. Section 7 was enacted to prevent even small mergers that added to concentration in an industry. *See* #1775, 81st Cong. 2nd Sess.5, other cites omitted." *Brown Shoe, Co. v. United States*, 370 U.S. 294, 344 (1962) at Footnote 72.

The Court further noted that "the dominant theme pervading Congressional consideration of the 1950 amendment was the fear of what was considered to be a rising tide of economic concentration in the American economy….studies were cited as evidence of the danger to the American economy in unchecked corporate

expansion through merger. …[o]ther considerations cited in support of the bill were the desirability of retaining 'local control' over industry and the protection of small businesses." ". . . Congress' fear not only of accelerated concentration of economic power on economic grounds, but also of the threat to other values a trend toward concentration was thought to pose." *Brown Shoe, Co. v. United States*, 370 U.S. at 315-16.

Subsequent to *Brown Shoe,* which enjoined the merger even though the shares were less than 10% after the company was acquired, there ensued a series of decisions by the Supreme Court that continued the policy of promoting internal expansion rather than merger. *United States v. Aluminum Co. of America*, 377 U.S. 271 (1964); *United States v. Falstaff Brewing Corp.*, 410 U.S. 526 (1973); *United States v. Pabst Brewing Co.,* 384 U.S. 546 (1966); *United States v. Philadelphia National Bank*, 374 U.S. 321 (1963); *United States v. Vons Grocery Co.*, 384 U.S. 270 (1966).

In the mid-1980's, private persons and the new Antitrust Chief, displeased with the decisions by the Supreme Court, wrote a number of rules, including the Merger Guidelines, that hobbled the enforcement and prosecution of Section 7. Those provisions were not and are not the law, even though many of the Courts adhere to them. As the former head of the FTC stated;

> "The [Merger] Guidelines lack the force of law. They formally bind no one - not the courts, not other countries, not even the Department of Justice. Yet they have exerted enormous influence on the antitrust enforcement community and the

courts in the United States." Former Chairman of the Federal Trade Commission Timothy J. Muris, June 10, 2002, (https://www.ftc.gov/news-events/news/speeches/prepared-remarks-0#N_10_).

That influence, in contradiction to the decisions by the Supreme Court and the purposes and policies of the 1950 amendment, was followed by the Bankruptcy Court, the United States District Court, and the appellees in this very case.

**Argument**

Neither the Bankruptcy Court nor the United States District Court have the power or authority to reject decisions by the Supreme Court, and both must be reversed. Indeed, turning the law on its head, the District Court was of the view that the silence of Congress supported the "modern" merger law rather than supporting the Supreme Court decisions by failing to reverse them, noting that "…Congress has not stepped in to remedy what appellants suggest here is an arrogation of legislative powers to the courts which suggests that Congress does not perceive this framework to be such an arrogation." [SPA-31.]

The Court has it upside down. Congress has not stepped in to change or arrogate the decisions of the Supreme Court of the 1960's and early 1970's. In some ways, the action here is similar to *Flood v. Kuhn*, 407 U.S. 258 (1972) in which the

Supreme Court did not reverse a 1928 case regarding baseball on the basis of *stare decisis* and the fact that the Congress did not step in to change the baseball decision.

In terms of merger law, the Supreme Court decisions of the 1960's and early 1970's are controlling and must be adhered-to, regardless of whether the Bankruptcy Court or the District Court agrees with those decisions or not.

In an effort to rebuke the Supreme Court's decision of the 1960's and 1970's, the Bankruptcy Court, the District Court, and the appellees suggest that the Supreme Court's subsequent decision in *General Dynamics* in effect cancelled out the prior Supreme Court decisions or at least made them ineffective. That case, *United States v. General Dynamics Corp.*, 415 U.S. 486, 94 S. Ct. 1186, 39 L. Ed. 2d 530 (1974) was later refuted by Judge Posner and others because of the peculiarity of its facts; namely, that there had been no possibility of future sales. There was no future for the acquired company in that case. It therefore could not lessen competition because there was none. Consequently, the acquisition in that case had zero effect on the future. As Judge Posner recognized, *General Dynamics* had no impact whatsoever on the decisions by the Supreme Court. *Hospital Corp. of Am. v. FTC*, 807 F.2d 1381, 1385 (7th Cir. 1986) (Posner, J.).

What Judge Posner said deserves to be repeated, in full, again:

> "The Commission may have made its task harder (and opinion longer) than strictly necessary, however, by studiously avoiding reliance on any of the Supreme Court's section 7 decisions from the 1960's except *United States v. Philadelphia Nat'l Bank*, 374 U.S.321, 83 S. Ct. 1715, 10 L.Ed. 2d 915 (1963), which took an explicitly economic approach to the interpretation of the

statute. The other decisions in that decade--in particular *Brown Shoe Co. v. United States*, 370 U.S. 294, 82 S. Ct. 1502, 8 L. Ed. 2d 510(1962); *United States v. Aluminum Co. of America*, 377 U.S.271, 84 S. Ct. 1283, 12 L. Ed. 2d 314 (1964); *United States v. Von's Grocery Co.*, 384 U.S. 270, 86 S. Ct. 1478, 16 L. Ed. 2d555 (1966), and *United States v. Pabst Brewing Co.*, 384 U.S. 546, 86 S.Ct. 1665, 16 L. Ed. 2d 765 (1966)--seemed, taken as a group, to establish the illegality of any non-trivial acquisition of a competitor, whether or not the acquisition was likely either to bring about or shore up collusive or oligopoly pricing. The elimination of a significant rival was thought by itself to infringe the complex of social and economic values conceived by a majority of the Court to inform the statutory words 'may ... substantially ... lessen competition.' None of these decisions has been overruled. Although both *United States v. General Dynamics Corp.*, 415 U.S. 486, 94 S. Ct. 1186, 39 L. Ed. 2d 530 (1974), and *United States v. Citizens & Southern Nat'l Bank*, 422 U.S. 86, 95 S. Ct. 2099, 45 L. Ed. 2d 41 (1975) (both discussed in our recent decision in *Ball Memorial Hospital, Inc. v. Mutual Hospital Ins., Inc.*,784 F.2d 1325, 1336-37 (7th Cir. 1986)), refused to equate the possession of a significant market share with a significant threat to competition. These cases involved highly unusual facts, having no counterpart in this case, that required discounting large market shares. In *General Dynamics* the shares were of current sales (of coal) made pursuant to long-term contracts entered into a long time ago; future sales would depend on uncommitted reserves, and one of the acquired firms had no uncommitted reserves. In *Citizens & Southern* the acquired banks were already under the effective control of the acquirer (they were its "de facto branches"), so that the formal merger had little competitive significance."

See also, *Antitrust Law – An Economic Perspective,* by Richard Posner, University of Chicago Press, 1976. Pg 109-111.

In this case there was a substantial trend towards concentration by the major airline companies. Indeed, in just a couple of years, Delta bought Northwest; United bought Continental; Southwest bought Air Tran and then, in this case, American bought US Air, giving more than 80% control of the airline industry to these four

firms. (Government Accounting Office, AIRLINE MERGERS, Issues Raised by the Proposed Merger of American Airlines and US Airways, A-732 @ A-748.) In addition, American Airlines became the largest airline in the country. There were at least 12 airport pairs of nonstop overlapping service that resulted in complete monopolies. (GAO at A-753.) There were over 1600 city pairs in which competition was eliminated and was presumptively illegal under the HHI. The complete listing of city pairs which the Herfindahl index demonstrates are presumptively illegal are noted at Appendix A-635.

There were a substantial number of airports which, by reason of the merger, were reduced from 4 to 3 competitors. There were a number of airports which, by reason of the merger, were reduced from 3 competitors to 2. There were a number of airports which, by reason of the merger, were reduced from 2 competitors to 1. (Appendix A-733) Capacity was substantially reduced in the large hubs, the medium hubs and the small hubs. (Appendix A-803).

Prior to the announcement of the merger, American airlines specifically and continually stated that it would operate as a stand-alone carrier and would be the best and most successful airline in the United States. However, that was changed when the Chief Executive Officer of American Airlines was promised $20 million dollars personally. The stand-alone concept was promptly abandoned. American Airlines agreed to a merger with US Air. Less than four days after the announcement of the merger, prices of tickets were increased by $4-$10 by American, United, Delta, and later Southwest. (Appendix A-281.)

Notwithstanding the binding authority of the Supreme Court and the silence of Congress, the Bankruptcy Court allowed the merger to be consummated in December 2013, denying the plaintiffs' motion for injunction.

Subsequent to the merger, the plaintiffs on numerous occasions, had attempted to amend the complaint to include damage allegations and the right to trial by jury under Section 4 of the Clayton Act. Both the Bankruptcy Court and the United States District Court viewed the matter as a failure to properly amend the complaint, thereby denying indirectly the plaintiffs' constitutional right to a trial by jury. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959). The plaintiffs showed and demonstrated explicitly by city pairs how they had been damaged after the merger by the increased fares, the truncated schedules and the quality of services. (Appendix A-543, A-564, et seq.)

Finally, the effort by the two companies to pay the Chief Executive Officer of American Airlines $20 million - which changed his mind from American Airlines being a stand-alone company to agreeing to the acquisition - was objected to by the Trustee in the Bankruptcy Court and then denied by the Bankruptcy Court. Nonetheless, the facts showed that the Chief Executive Officer of US Air, who now controlled American Airlines, organized a group of investors to pay the former CEO of American Airlines the $20 million he had been promised on the grounds that he had "earned it" even though he had done nothing to earn it but capitulate to the acquisition.

## Conclusion

The Bankruptcy Court, the United States District Court and the Appellees have drawn a line in the sand. They have specifically rejected any notion of adhering to the binding authority of the United States Supreme Court. If that authority is to be overruled, or worse, ignored, only the Supreme Court and Congress itself may do so. The decisions by the Bankruptcy Court and the United States District Court must be reversed and remanded unless this Court is of the opinion, as the evidence demonstrates under the law and facts, that an Order to commence and complete the divestiture of US Air from American Airlines should be issued.

Dated: November 23, 2022                Respectfully submitted,


/s/ *Joseph M. Alioto*
Joseph M. Alioto (*pro hac vice*)
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, CA 94104
Phone: (415) 434-8900
Email: jmalioto@aliotolaw.com

Theresa D. Moore (*pro hac vice*)
Law Offices of Theresa D. Moore, PC
One Sansome Street, 35th Floor
San Francisco, CA 94104
Phone: (415) 613-1414
Email: tmoore@aliotolaw.com

Christopher Nedeau (CA SBN 81297)
NEDEAU LAW FIRM
154 Baker Street
San Francisco, CA 94117
Phone: (415) 516-4010
Email: cnedeau@nedeaulaw.net

Lawrence G. Papale (CA SBN 67068)
LAW OFFICES OF LAWRENCE G. PAPALE
1308 Main Street Suite 117
St. Helena, CA 94574
Phone: (707) 963-1704
Email: lgpapale@papalelaw.com

*Attorneys for Plaintiffs*

# Certificate of Compliance
## with Fed. R. App. 32(a)(7)

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief contains 3402 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Garamond font.

Executed on November 23, 2022.

*/s/Joseph M. Alioto*
JOSEPH M. ALIOTO

**Certificate of Service**

I hereby certify that on November 23, 2022, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Second Circuit using the CM/ECF system, which will provide notification of such filing to all who are ECF-registered filers.

<u>*/s/Joseph M. Alioto*</u>
JOSEPH M. ALIOTO